[No. 4651.]

OBERTO v. SMITH ET AL.

**Mines and Mining—Location of Claim—Validity.**

Where the owners of a three-fourths interest in a mining claim gave another permission to enter thereon and make a new location, and thereafter the owner of the other one-fourth in-

terest executed a written ratification of the abandonment, the latter act was equivalent to an abandonment at the time the three-fourths interest was abandoned, and subsequent locators cannot urge that the initiation of the location by the person given such permission was by trespass.—P. 24.

*Appeal from the District Court of San Miguel County.*

*Hon. Theron Stevens, Judge.*

Action by Charles A. Smith, John E. Conn and V. St. John, on an adverse to the location of a mining claim by Piter Oberto. From a judgment in favor of plaintiffs, defendant appeals.        *Reversed.*

Messrs. HOGG & WATSON, for appellant.

Mr. L. C. KINNIKIN, for appellee.

Mr. JUSTICE STEELE delivered the opinion of the court:

Smith and his associates located the Union lode in Upper San Miguel mining district, on the 1st of January, 1902, and brought adverse suit in the district court of San Miguel county against Oberto, who had located a lode formerly known as the Jupiter, as the Hattie lode, in said district some time prior to the location of the Union. The record discloses that the Hattie lode was located on the 16th of September, 1901. The land embraced in the two locations is the same. In the case of *Conn v. Oberto,* reported in 32 Colo. 313, it was held that the action of Hogg and Oberto, the owners of three-fourths of the Jupiter, in granting permission to Piter Oberto to enter into the possession of the Jupiter and locate the Hattie thereon was an abandonment on their part of the Jupiter claim, but that such action did not deprive Shane, the owner of the remaining portion, of his interest in the Jupiter. Shane, however, is not before

us asserting an interest in the Jupiter, and the testimony shows that he subsequently declared to Mr. Hogg that he did not care to have anything more to do with the Jupiter claim. This statement, under the circumstances, must be regarded as an abandonment by him of his interest in the claim, and as a ratification of the act of his co-owners in permitting Oberto to locate the Hattie.

The locators of the Union say that as there was abandonment by but three-fourths of the owners of the Jupiter at the time of the Hattie location, the initiation of the Hattie was by trespass, and that the subsequent abandonment by the owner of the remaining portion of the Jupiter, after the location of the Hattie, did not have the effect of validating the Hattie location; that the annual labor was not performed on the Jupiter for the year 1901, and therefore that at the time of the location of the Union the land embraced within the Hattie and the Jupiter was open to appropriation. The court sustained the position taken by the locators of the Union, and rendered judgment in their favor.

The testimony in this case is somewhat different from that in the case cited. In this case a document executed by J. W. Shane appears in the record, as follows: "August 31, 1901. I hereby ratify the abandonment of the Jupiter lode near Pennsylvania tunnel. J. W. Shane." This document was executed some time during the month of November, 1901, and was dated as of August 31st. It was dated August 31st, as explained by the witness Hogg, "in order to have the date correspond with the statement of Mr. Oberto and myself that we did not care longer to hold the property." Mr. Hogg also testified that the owners had an agreement to the effect that each owner agreed to be bound by the acts of the others with reference to the property. He said, in response

to a question inquiring if he had authority from Shane to abandon the claim: "None directly, except we were interested in a number of claims together, and we had agreed that what one would do the other would do." In the case referred to above, Mr. Hogg testified in reference to the abandonment and the granting of permission to take possession of the property that: "At that time Joe Oberto and myself owned all the property, so far as the records appear and so far as I know, and he says he didn't care to have anything more to do with it, and he wanted to know if his brother Piter might locate it. Shane, I remember, also had a quarter interest at that time; and I said, so far as I was concerned, to go ahead. And I saw Shane afterwards, and he said he did not care to have anything to do with it. I know that about the latter part of August or the first of September we had abandoned the property."

It appears from the testimony that about the time of the conversation with Hogg and Oberto, Piter Oberto went into possession of the property, and located it on September 16, 1901, and that subsequently he performed labor upon the Hattie. He said, when asked what work he had done on the Hattie after September, 1901: "About fifty-one and a half feet from the outside to the inside to the breast of the tunnel."

We are of opinion that the locator of the Hattie was not a trespasser; that having obtained permission from the owners of three-fourths interest in the Jupiter to enter into possession of the property, they stating to him that they did not care to have anything more to do with the claim, the owners authorized him to take possession thereof and abandoned their interests; and that when subsequently Mr. Shane, the owner of the other interest, consented to abandon the property, that it was equiva-

lent to an abandonment at the time Hogg and Oberto abandoned, and that such consent .on the part of Shane operated as a ratification of the act of his co-owners; and that all interests having been abandoned prior to any act of location by the claimants of the Union lode, they cannot complain that the entire interest in the claim was not abandoned at the time of the Hattie location. We are also of opinion that the annual assessment work had been performed by Oberto.

The judgment is reversed.          *Reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE CAMP-BELL concur.